```
                FILED    ___ LODGED
                RECEIVED ___ COPY

                    APR  2 2003

                CLERK U S DISTRICT COURT
                DISTRICT OF ARIZONA
                BY_____ DEPUTY
```

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Irwin Bobacher, a single man,<br><br>    Plaintiff,<br><br>vs.<br><br>Wacker USA Corporation, a foreign corporation; Dolmar Corporation, a foreign corporation; Makita U.S.A., Inc., a foreign corporation; Makita Corporation, a foreign corporation; Black Corporation I-V; White Corporation I-V; John Does I-V; and Jane Does I-V,<br><br>    Defendants.<br><br>Wacker USA Corporation, a foreign corporation,<br><br>    Third Party Claimant,<br><br>vs.<br><br>Makita U.S.A., Inc., a foreign corporation; Makita Corporation, a foreign corporation,<br><br>    Third Party Defendants. | No. CIV 00-741-PHX-EHC<br><br>**ORDER** |

## BACKGROUND

In 1996 or 1997, Plaintiff James Irwin Bobacher ("Plaintiff") bought a used Wacker BTS 11 Chop Saw (the "Wacker Saw") at a swap meet. Plaintiff used the Wacker Saw for cutting up and recycling metals such as copper. The Wacker Saw is a hand saw with a circular blade, with the top half of the blade covered by a protective



1  hood. Plaintiff obtained an owner's manual but no other accessories. Up to the time of
2  Plaintiff's accident, he had used the Wacker Saw successfully for two to three hundred
3  hours. Previous to the accident, the Wacker Saw was not missing any parts, including the
4  hood, the hand guard, and the star grip knob that tightens the hood adjuster to prevent it
5  from moving. Plaintiff alleges he habitually tightened the star grip knob each time he
6  used the saw.
7      On or about the afternoon of January 31, 1998, Plaintiff was in his backyard
8  cutting an armature with the Wacker Saw for the purpose of extracting the copper inside.
9  The armature consisted of approximately a thousand paper-thin plates of steel in a
10 winding. Before using the Wacker Saw, Plaintiff checked the star grip knob to make sure
11 it was tight.
12     After using the Wacker Saw for about an hour, Plaintiff suddenly felt "something
13 hit me in my face, hit me and took my feet right from under me, and I was up in the air
14 quite high. Out of this eye I knew I was hit. Blood was just pouring out of my face."
15 (Plaintiff's Separate Statement of Facts ("PSSOF"), Exh. 1, p. 43) [Dkt. 90]. Plaintiff ran
16 inside the house to obtain the aid of his girlfriend and brother. Upon seeing Plaintiff's
17 facial injury, both Plaintiff's brother and Plaintiff's girlfriend passed out. The girlfriend
18 of Plaintiff's brother wrapped a towel around Plaintiff's head.
19     Plaintiff was taken to a hospital and underwent surgeries for his injury. However,
20 he still suffers permanent physical and emotional damage from the accident.
21     Plaintiff has a proposed expert, Quent Augspurger ("Augspurger"), to testify the
22 accident occurred because the Wacker Saw suffers from a design defect, i.e., the
23 vibrations from the ordinary use of the Wacker Saw can cause the star grip knob and
24 threaded fastening system to loosen, thus causing the safety hood to vibrate loose and
25 either (1) permit the saw to kick back and cut the user or (2) fail to protect the user from
26 flying pieces of metal.
27
28

**PROCEDURAL HISTORY**

On January 28, 2000 Plaintiff filed a Complaint in Maricopa County Superior Court alleging claims for strict liability, negligence and failure to warn.

On April 24, 2000, the case was removed to federal court. On May 30, 2001, Plaintiff filed a First Amended Complaint [Dkt. 18]. On November 1, 2002, Defendants filed a Motion for Summary Judgment.[1] [Dkt. 68]. On December 18, 2002, Plaintiff filed a Response [Dkt. 88], and on January 17, 2003, Defendants filed a Reply [Dkt. 94].

**DISCUSSION**

Defendants argue Augspurger's opinion is inadmissible for three reasons: (1) he is not qualified to testify as an expert about defects in power saws; (2) his opinions are unreliable under the standards set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786 (1993) and Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 119 S. Ct. 1167 (1999); and (3) his theories as to the cause of Plaintiff's injuries are speculative. The Court will address Defendants' second argument, the reliability of Augspurger's proposed expert testimony under Daubert.

> **Rule 702.** Testimony by Experts
>
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.[2] The Supreme Court interpreted Rule 702 and articulated general guidelines for its application in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786 (1993), and Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 119 S. Ct. 1167 (1999). Daubert focused on scientific testimony, while Kumho made clear

---

[1] On the same day, Defendant/Third-party Defendant Makita U.S.A., Inc. filed a separate Motion for Summary Judgment [Dkt. 68].

[2] The Rule was amended in April 2000 to affirm the Supreme Court's holdings in Daubert and Kumho Tire. Fed. R. Evid. 702 advisory committee's note.

1  that Daubert's principles apply to "technical and other specialized knowledge" as well.
2  Kumho, 526 U.S. at 141, 147-49, 119 S. Ct. 1167.

3   "The trial court must act as a 'gatekeeper' to exclude 'junk science' that does not
4  meet Rule 702's reliability standards by making a preliminary determination that the
5  expert's testimony is reliable." Elsayed Mukhtar v. California State Univ., Hayward, 299
6  F.3d 1053, 1063 (9th Cir. 2002) (citing Kumho Tire, 526 U.S. at 147-48, 199 S. Ct.
7  1167). In determining whether the testimony is reliable, a court should focus on the
8  expert's methodology rather than his conclusions. Daubert, 509 U.S. at 595, 113 S. Ct.
9  2786.

10   "Daubert provided a non-exhaustive list of factors for determining whether expert
11  testimony is sufficiently reliable to be admitted into evidence, including: (1) whether the
12  scientific theory or technique can be (and has been) tested, (2) whether the theory or
13  technique has been subjected to peer review and publication, (3) whether there is a
14  known or potential error rate, and (4) whether the theory or technique is generally
15  accepted in the relevant scientific community." Elsayed, 299 F.3d at 1064. "A trial court
16  not only has broad latitude in determining whether an expert's testimony is reliable, but
17  also in deciding *how* to determine the testimony's reliability." Id. For example, a
18  separate, pretrial hearing on reliability is not required. Id.

19   The Court can only consider the first two factors because Augspurger (1) failed to
20  perform any tests on the Wacker Saw even though the saw was available for testing and
21  (2) failed to produce any published tests on the fastening systems of Wacker Saws or
22  other types of power saws. Augspurger testified during deposition that the threaded
23  hand-fastening system on the Wacker Saw was susceptible to loosening from vibration.
24  He also found other power saws to have well-known superior fastening systems that
25  would not be loosened from vibration. When asked about testing or published authority
26  on this issue, however, Augspurger admitted he had nothing to offer:

27   Q. MS. GOLDSMITH: You have no authoritative source and no testing to
    support your opinion that had the locking mechanism from the Stihl saw or the
28

-4-

Partner saw been on the Wacker saw Mr. Bobacher's injuries could have been avoided?

MS. COUNTERS: Form.

WITNESS: I'm the authoritative source.

MS. GOLDSMITH: And that's it?

WITNESS: That's good enough.

Assuming, *arguendo*, that Augspurger is qualified to testify about power saw defects in general, his proposed testimony in the present case lacks the foundation of relevant empirical data. Augspurger's proposed testimony thus fails the Daubert gatekeeper test for expert testimony.

Plaintiff's theories of liability are premised on Augspurger's proposed expert testimony. Because Augspurger's proposed expert testimony is inadmissible under Daubert, Plaintiff's claims must fail.

Accordingly,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment [Dkt. 70] is **GRANTED.**

**IT IS FURTHER ORDERED** that judgment be entered in favor of Defendants and that Plaintiff take nothing by this action.

DATED this 1st day of April, 2003.

_____
Earl H. Carroll
United States District Judge